```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                            :
RONALD BUNN,                                                :
                                                            :
                              Plaintiff,                    :       10 Civ. 2297 (PAE)
                                                            :
             -v-                                            :       OPINION & ORDER
                                                            :
CITY OF POUGHKEEPSIE et al.,                                :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------------------X
```

PAUL A. ENGELMAYER, District Judge:

Defendants the City of Poughkeepsie (the "City") and three unidentified John Doe police officers (collectively, "defendants") move for summary judgment against the complaint of plaintiff Ronald Bunn, which claims, pursuant to 42 U.S.C. § 1983, that defendants' conduct violated Bunn's rights to due process and equal protection under the Fourteenth Amendment. For the following reasons, the motion is granted and judgment will be entered in favor of defendants.

I.      **Background and Material Facts**[1]

On April 16, 2007, a man named Joseph Crocco was charged with menacing plaintiff Ronald Bunn, and was remanded to Dutchess County Jail. Def.'s 56.1 ¶ 2; Pl.'s 56.1 ¶ 2. That same day, an order of protection was issued in favor of plaintiff and against Crocco. Def.'s 56.1 ¶ 4; Pl.'s 56.1 ¶ 4. On April 19, 2007, Crocco was released from Dutchess County Jail. Def.'s

---

[1] The Court's account of the underlying facts of this case is drawn from the parties' Local Rule 56.1 Statements, the Affirmation of Thomas F. Kelly III in Support of Defendants' Motion for Summary Judgment ("Kelly Aff."), with attendant exhibits, and the Affirmation of Ambrose Wotorson in Opposition to Defendants' Motion for Summary Judgment ("Wotorson Aff."), with attendant exhibits.

[1]

56.1 ¶ 3; Pl.'s 56.1 ¶ 3. On the afternoon of April 19, 2007, Bunn and Crocco had a chance encounter on the streets of Poughkeepsie, at which "angry words" were exchanged from opposite sides of a street. *See* Bunn Dep. 63–66, attached as Ex. E to Kelly Aff. Thereafter, Bunn and his companion went to the Poughkeepsie police station, where he told a desk officer that "we were having a problem with Joe Crocco and how are we going to protect ourselves." Bunn Dep. 72:16–19  The desk officer "said that you have to wait until something happened." *Id.* Bunn, however, did not specifically inform the desk officer that he had taken out an order of protection against Crocco. *Id.* at 72:20–24. Bunn and his companion then returned home. *Id.* at 73:18–20.

Early on the morning of April 20, 2007, Bunn was struck in the arm by a bullet while in his bedroom. Def.'s 56.1 ¶ 5; Pl.'s 56.1 ¶ 5. Bunn believes that Crocco was the assailant, but it does not appear that Crocco was ever arrested or prosecuted for this alleged crime. Bunn Aff. ¶ 18, attached as Ex. 24 to Wotorson Aff.

On March 16, 2010, Bunn filed this lawsuit, claiming that the City failed to respond to his complaint about Crocco because Bunn is a resident of Tubman Terrace, a public housing project in Poughkeepsie, and that this failure deprived him of the equal protection of the laws under the Fourteenth Amendment. Cmplt. ¶¶ 6.l, 7, 12 (Dkt. 1). Bunn also claims that the City's inattention to the complaints of Tubman Terrace residents constitutes a custom, policy, or practice. *Id.* at ¶ 7. Bunn further alleges that the City's failure to protect him pursuant to the order of protection deprived him of his due process rights under the Fourteenth Amendment. *Id.* at ¶¶ 10, 14. Following discovery, defendants moved for summary judgment on December 16, 2011. On February 24, 2012, after numerous extensions, plaintiff served papers in opposition. On March 16, 2012, defendants served a reply.

Defendants' motion argues that: (1) Bunn has failed to adduce evidence that residents of Tubman Terrace are afforded any less police protection than the general public; (2) even if Bunn had shown such treatment, a state's failure to protect an individual against private violence is not a due process violation, absent exceptional circumstances not present here, and that, in any event, Bunn's claim fails for the independent reason that defendants' failure to afford police protection does not shock the conscience; (3) Bunn has failed to adduce evidence of an official policy or custom sufficient to ascribe liability to the City under *Monell v. Dept. of Soc. Servs..*, 436 U.S. 658 (1978); (4) even if Bunn had made out these claims, defendants would be entitled to qualified immunity.

Plaintiff's opposition argues that (1) material facts are disputed as to plaintiff's claims; (2) Bunn has sufficiently pled a *Monell* claim; and (3) defendants are not entitled to qualified immunity. That submission also attaches an affidavit from Bunn which deviates significantly from his prior deposition testimony in this matter.

Defendants' reply disputes the reliability of Bunn's affidavit, which, defendants correctly observe, benefits from a number of recollections seemingly refreshed by his adversary's summary judgment motion. The reply also reiterates defendants' position that Bunn has not met his burden to support the claims in his complaint with any evidence.[2]

---

[2] Despite the Court's order that the parties file their respective submissions on ECF, *see* Dkt. 33, the parties have failed to properly do so, instead submitting courtesy copies to Chambers. The parties are, once again, ordered to upload their summary judgment submissions (*i.e.*, briefs, Local Rule 56.1 statements, and attendant declarations) in compliance with the ECF rules, so that a clear electronic record of this motion exists, should Bunn wish to appeal.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment may be granted only where the submissions, taken together, "show [] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a material factual question; in making this determination, the court must view all facts "in the light most favorable" to the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Bunn's Equal Protection Claim

Bunn claims that defendants' failure to protect him (and other Tubman Terrace residents) pursuant to the order of protection deprived him of the equal protection of the law. "The Equal Protection Clause of the Fourteenth Amendment guarantees 'a right to be free from invidious discrimination in statutory classifications and other government activity.'" *Laupot v. City of New York*, No. 01-cv-3294, 2002 U.S. Dist. LEXIS 912, at *4–5 (S.D.N.Y. Jan. 18, 2002) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)). "The Clause is 'essentially a direction that all persons similarly situated should be treated alike.'" *Laupot*, 2002 U.S. Dist. LEXIS 912, at *5 (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).

Bunn's complaint does not allege that residents of Tubman Terrace, or subsidized housing in general, constitute a protected class.[3] Bunn's submission in opposition to the present motion suggests that Bunn's theory of equal protection liability may have changed, and that now the class of persons being discriminated against is limited to those who hold orders of protection. *See* Pl.'s Opp. 5 ("the facts strongly suggest that defendants' articulated policy of not acting upon violations of Orders of Protection until violence actually occurs, amounted to assisting plaintiff's assailant."); Bunn Aff. ¶ 12 ("There is no rational basis for not extending Equal Protection of the law to the people, like me who have been threatened with bodily harm by people who have Orders of Protection against them."). Bunn does not assert that he is a member of a protected class on that basis either.

"A plaintiff who does not claim to be a member of a constitutionally protected class may bring an Equal Protection claim on one of two theories: selective enforcement or 'class of one.'" *Missere v. Gross*, No. 09-cv-8183, 2011 U.S. Dist. LEXIS 141327, at *39 (S.D.N.Y. Mar. 31, 2011) (citing *Cobb v. Pozzi*, 363 F.3d 89, 109–10 (2d Cir. 2004) (distinguishing "selective prosecution" and "class of one" Equal Protection claims)); *see also Gentile v. Nulty*, 769 F. Supp. 2d 573, 579 (S.D.N.Y. 2011) (courts in this circuit "have generally treated selective enforcement and class of one theories as distinct theories with distinct elements of proof.") (internal quotation marks and citation omitted). It is not clear which of these theories Bunn pursues. The Court assumes *arguendo* that Bunn has pled both, but finds both claims meritless.

"To state a claim for selective enforcement, a plaintiff must allege facts supporting a conclusion that 1) he was 'treated differently from other similarly situated' comparators, and 2)

---

[3] Even if Bunn did make such an allegation, it would appear to lack support in case law. *Cf. Helgason v. Doe*, No. 10-cv-5116, 2011 U.S. Dist. LEXIS 103900, at *11 (S.D.N.Y. Sept. 13, 2011) ("Tenants—even of rent-controlled or rent-stabilized buildings—are not a protected class").

'that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Missere*, 2011 U.S. Dist. LEXIS 141327, at *41 (quoting *Cine Sk8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)); *see also Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995). Similarly, "[a] class-of-one claim requires the plaintiff to allege facts showing that the plaintiff 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Missere*, 2011 U.S. Dist. LEXIS 141327, at *41 (quoting *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010), *cert. denied*, ___ U.S. ___, 131 S. Ct. 2970 (2011)); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Both claims thus require plaintiff to adduce evidence demonstrating that he was, in fact, treated differently from similarly situated comparators.

Bunn's discovery requests to defendants sought information sufficient to determine whether plaintiff was, in fact, treated differently from such comparators. *See* Wotorson Aff. Ex. 25 at p.4 Interrog. 10 ("Identify all requests for police assistance emanating from Tubman Terrace, between May 1, 2005 and May 1, 2007, by caller's name, last known address and disposition of each police response, if any."); *Id.* at p.6 Doc. Req. 2 ("All police guidelines, directives, policy statements, procedures, and training materials, in any form and of any type, concerning police policy, custom or practice regarding: (a) Processing and responding to requests for police assistance by civilians; and (b) Enforcing Orders of Protection."). Despite nearly two years of discovery, Bunn has presented the Court with no evidence whatsoever tending to show that he, as either a resident of Tubman Terrace or a holder of an order of protection, was treated any differently than any other citizen. Indeed, Bunn does not even

identify a comparator against which his own treatment should be judged. Accordingly, on the record at summary judgment, no "fair-minded jury" could find such disparate treatment without engaging in "unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (citing *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)). Defendants' motion for summary judgment as to this claim is, therefore, granted.

      C.      **Bunn's Due Process Claim**

Bunn also claims that defendants' failure to take action pursuant to the order of protection, after he reported the April 19, 2007 interaction with Crocco, violated his due process rights under the Fourteenth Amendment. "Although '[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause,' *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989), state actors may be liable under section 1983 if they affirmatively created or enhanced the danger of private violence." *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 427–28 (2d Cir. 2009) (quoting *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). Even if Bunn's "claim falls within one of these two exceptions, and the officers' behavior violated a constitutional obligation, [Bunn] faces a further hurdle: he must show that the officers' behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8 (1998)).[4]

---

[4] There is another route, not relevant here, by which official inaction can violate a plaintiff's due process rights—where the plaintiff has some "special relationship" with the government which requires governmental action to keep the plaintiff from harm, *e.g.*, where the plaintiff is a prisoner, ward of the state, or child placed into foster care. *See, e.g.*, *Benzman v. Whitman*, 523 F.3d 119, 127 (2d Cir. 2008). Bunn does not allege the existence of any "special relationship"

Here, Bunn asserts that the City's policy of not intervening pursuant to orders of protection until "something actually happens" creates or enhances the danger of private violence. However, the facts of this case, viewed in the light most favorable to Bunn, do not establish a "state created danger" on which a due process violation can be premised. The Second Circuit has found a "state created danger" based on police inaction only where the inactivity is communicated in such a way as to constitute "affirmative condoning of private violence." *Okin*, 577 F.3d at 428; *Claudio v. Sawyer*, 409 F. App'x 464, 466 (2d Cir. 2011) (summ. order) ("The 'state-created danger' doctrine holds government officials liable for private harms if their affirmative conduct . . . communicates, explicitly or implicitly, official sanction of private violence.") (internal quotation marks omitted). Therefore, "'[i]t is not enough to allege that a government actor failed to protect an individual from a known danger of bodily harm or failed to warn the individual of that danger.'" *Robischung-Walsh v. Nassau Cnty. Police Dep't*, 421 F. App'x 38, 41 (2d Cir. 2011) (summ. order) (quoting *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007)).

Under this line of doctrine, actionable government conduct has been found where, for example, police officers discussed casual topics, such as sports, when called to the scene of a domestic violence complaint, *Okin*, 577 F.3d at 429–30, where police officers participated in defendant's drinking, and then allowed or encouraged the defendant to drive while intoxicated, causing deaths on the roadways, *Pena v. Deprisco*, 432 F.3d 98, 111 (2d Cir. 2005), where police allowed a robbery victim to assist in the pursuit of a suspect, which resulted in the victim shooting the suspect with a gun police had provided, *Hemphill v. Schott*, 141 F.3d 412, 418–19

---

that would create such a duty. He argues instead that police inaction enhanced the danger to him from Crocco. *See* Pl. Br. 5.

[8]

(2d Cir. 1998), and where police suggested to rallying skinheads that as long as they did not beat their victims too severely, the police would not intervene. *Dwares*, 985 F.2d at 99.[5]

Each and every one of these cases has a common thread: explicitly or implicitly, the police communicated *to the defendant* that his or her actions were acceptable or, at least, would go unpunished. Such communication is, in fact, a necessary prerequisite to "condoning" such conduct. Here, however, there is neither an allegation nor evidence that the police condoned Crocco's behavior, or had any communication with Crocco whatsoever between the time the order of protection was issued and the time that Bunn was shot. Thus, by definition, the defendants could not have condoned, encouraged, or emboldened any of Crocco's behavior which constituted a violation of the order of protection. There is, moreover, no allegation that Bunn or his companion told Crocco that they had contacted the police about an alleged violation of the order of protection, such that the police's subsequent inaction could generate, in Crocco's mind, the inference of official approval. Accordingly, Bunn has neither alleged nor substantiated any facts upon which a jury could properly premise a finding that defendants violated Bunn's due process rights. This claim, therefore, must also be dismissed.[6]

---

[5] By contrast, government conduct has been found not actionable where municipal agents failed to notify police of an illegal sexual relationship between the defendant and plaintiff, *Romero v. City of New York*, No. 08-cv-2529, 2012 U.S. Dist. LEXIS 36049, at *81–83 (E.D.N.Y. Mar. 16, 2012), where public employee defendants allegedly under-reported incidents of violent or disruptive behavior by students and failed to punish or confront plaintiff's assailants, *Chambers v. N. Rockland Cent. Sch. Dist.*, No. 07-cv-8190, 2011 U.S. Dist. LEXIS 109601, at *32–33 (S.D.N.Y. Sept. 27, 2011), or where a county probation department failed to enforce the terms of a defendant's probation, which could have prevented defendant from being in a position to harm plaintiff, *Lesperance v. Cnty. of St. Lawrence*, No. 10-cv-1273, 2011 U.S. Dist. LEXIS 92439, at *12–14 (N.D.N.Y. Aug. 18, 2011).

[6] Because the Court has concluded that no reasonable jury could find that a constitutional violation occurred, the Court need not address the issue of qualified immunity. *Allen v. City of New York*, No. 09-cv-6229, 2011 U.S. Dist. LEXIS 28853, at *15 (S.D.N.Y. Mar. 16, 2011); *Public Adm'r of Queens County v. City of New York*, No. 06-cv-7099, 2010 U.S. Dist. LEXIS 118175, at *37 (S.D.N.Y. Nov. 2, 2010).

### D. Municipal Liability

Because the Court has concluded that no reasonable jury could find that Bunn's constitutional rights have been violated, his claim of municipal liability pursuant to *Monell* is, *a fortiori*, meritless as well. *See Kraft v. City of New York*, 696 F. Supp. 2d 403, 420 (S.D.N.Y. 2010) (citing *Doe v. Smith*, 704 F. Supp. 1177, 1188 (S.D.N.Y. 1988) ("[T]here can be no municipal liability where no constitutional violations are found to have occurred.")); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 202 (E.D.N.Y. 2008) (holding that "no *Monell* claim can lie" absent an underlying constitutional violation).

### CONCLUSION

For the foregoing reasons, defendants' motion is granted. The Clerk of Court is directed to enter judgment in favor of defendants and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: May 9, 2012
New York, New York